IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., et al.,

Plaintiffs,

v.                                                                    CIVIL ACTION NO.   2:13-cv-14851

HERNSHAW PARTNERS, LLC,

Defendant.

MEMORANDUM OPINION & ORDER

Pending before the court is the plaintiffs' Motion for Leave to File Amended Complaint for Declaratory and Injunctive Relief and for Civil Penalties [Docket 19]. For the reasons stated below, the plaintiffs' motion is **GRANTED**. The plaintiffs are **DIRECTED** to file their proposed amended complaint within ten days of this Order.

Also pending before the court is the defendant's Rule 12(b)(1) Motion to Dismiss [Docket 11] and Rule 12(b)(6) Motion to Dismiss [Docket 13]. For the reasons stated below, these motions are **DENIED**.

## I. Background

The plaintiffs allege that the defendant discharges selenium in violation of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq., otherwise known as the Clean Water Act. The defendant is the owner of land that was previously used for coal mining operations. (Compl. for Decl. and Inj. Relief and for Civil Penalties [Docket 1], ¶ 9). Those mining operations involved the construction of a valley fill in a tributary of Laurel Fork of Ben Creek of Tug Fork. (*Id.* ¶¶ 9,

27). The plaintiffs allege that this valley fill is the source of selenium being discharged into the Laurel Fork tributary in violation of section 301 of the Clean Water Act, 33 U.S.C. §§ 1311. (*See id.* ¶¶ 1-2).

The plaintiffs are environmental groups. They allege that at least one of their members is personally affected by the selenium discharges. The plaintiffs seek a declaration that the defendant has violated and continues to violate the Clean Water Act, an injunction preventing the defendant from continuing to discharge selenium into Laurel Fork, and civil penalties pursuant to the Clean Water Act. (*See id.* at 9).

The defendant moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing [Docket 11] and under Rule 12(b)(6) for failure to state a claim [Docket 13]. Although the plaintiffs oppose both motions to dismiss, they seek to amend their complaint "out of an abundance of caution" to clarify the facts that support their Article III standing and their claim under the Clean Water Act. (Reply in Supp. of Pls.' Mot. for Leave to File Am. Compl. for Decl. and Inj. Relief and for Civil Penalties [Docket 27], at 1).

As I explain below, the plaintiffs can amend their complaint only if the amendments would survive a motion to dismiss. Therefore, whether to grant the plaintiffs' motion to amend and the defendant's motions to dismiss will necessarily involve the same legal analysis.

## II. Legal Standard for Amendment of Pleadings

Rule 15(a) of the Federal Rules of Civil Procedure permits amendment of a complaint after a responsive pleading has been filed "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Such leave should be freely given by the court "when justice so requires." *Id.* This is a permissive standard. The Fourth Circuit "reads Rule 15(a) to mean that leave to amend should be denied only when the amendment would be prejudicial to the opposing

party, there has been bad faith on the part of the moving party, or amendment would be futile."

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (citing

*Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)). An amendment is futile if it would

fail to survive a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

### III. Analysis

The defendant argues that it would be futile to allow the plaintiffs to amend their complaint

because it cannot survive a motion to dismiss under Rule 12(b). Specifically, the defendant argues

that the plaintiffs lack Article III standing and have failed to state a claim. In determining if the

amendment is futile, I apply the same standard used in determining whether to grant a motion to

dismiss. *See Wash. Gas Light Co. v. Prince George's Cnty. Council Sitting as Dist. Council*, 784 F.

Supp. 2d 565, 570 (D. Md. 2011) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir.

1995)); *Travelers Indem. Co. v. Dammann & Co., Inc.*, 592 F. Supp. 2d 752, 763 (D.N.J. 2008).

Accordingly, to determine whether the plaintiffs may amend their complaint, I must determine

whether their proposed amended complaint would survive a motion to dismiss.

### A.      The amendment is not futile for lack of Article III standing

First, the defendant argues that the plaintiffs lack standing under Article III of the United

States Constitution. In determining whether these plaintiffs lack standing under their proposed

amended complaint, I will accept as true the facts alleged in that pleading. *See Kerns v. United

States*, 585 F.3d 187, 192 (4th Cir. 2005). If those facts are sufficient to confer standing, the

amended pleading is not futile.

To have standing, a plaintiff must meet the following requirements: (1) the plaintiff must

have suffered an "injury in fact," (2) the injury must be "traceable to the challenged action of the

defendant," and (3) it must be "likely . . . that the injury will be redressed by a favorable decision"

from the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

There is a relatively low threshold for establishing an injury-in-fact in environmental litigation. "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (internal quotations omitted). The plaintiffs have alleged the following in their proposed amended complaint:

> At least one of Plaintiffs' members lives in Mingo County and has visited in the past and plans to continue to visit Ben Creek, including the area around Laurel Fork. That member is aware of Defendant's unpermitted selenium discharges from the Valley Fill and of elevated selenium levels in Laurel Fork. Plaintiffs' member knows that selenium can harm animals and is concerned about the effects of the unregulated selenium discharges on aquatic life, birds, and other wildlife that rely on healthy streams. That member's knowledge of Defendant's unmonitored, unregulated selenium discharges causes her to enjoy the affected waterways less than she would otherwise. Plaintiffs' member's knowledge of the unregulated discharges causes her to refrain from bringing her grandchildren to enjoy the affected waters in the ways that Plaintiffs' member did when she was a child.

([Proposed] Compl. for Decl. and Inj. Relief and for Civil Penalties ("Proposed Am. Compl.") [Docket 19-1], ¶ 13). These allegations, which concern the plaintiffs' "aesthetic or recreational interests," are sufficient to show an injury-in-fact. *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000). Accordingly, I **FIND** that the plaintiffs satisfy the injury-in-fact prong for Article III standing.

To establish the second element of standing—traceability—the plaintiffs need not show to scientific certainty that the defendant's conduct "caused the precise harm suffered by the plaintiffs." *Natural Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 n. 7 (4th Cir. 1992) (quoting *Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir.1990)). The plaintiffs need to show merely "that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern." *See Friends of the Earth*, 204 F.3d at 161. Here, the plaintiffs' proposed amended complaint alleges that a valley fill on the defendant's property discharges selenium without a permit. (*See* Proposed Am. Compl. [Docket 19-1], ¶¶ 1, 2, 29, 30). The plaintiffs allege that a water sampler hired by Sierra Club detected elevated levels of selenium less than one mile downstream from the valley fill, causing injury to at least one of the plaintiffs' member's aesthetic and recreational interests in Laurel Fork. (*See* Proposed Am. Compl. [Docket 19-1], ¶¶ 13, 31). These facts sufficiently trace the plaintiffs' injuries to the defendant's conduct. Accordingly, I **FIND** that the plaintiffs satisfy the traceability prong for standing.

The third element of standing—redressability—is clearly established. The plaintiffs seek injunctive relief and civil penalties to halt the discharge of selenium from the defendant's valley fill. "A plaintiff seeking injunctive relief shows redressability by alleging a continuing violation . . . of the statute at issue." *Friends of the Earth*, 204 F.3d at 162. Here, the plaintiffs have alleged that the defendant continues to discharge selenium in violation of the Clean Water Act. (*See* Proposed Am. Compl. [Docket 19-1], ¶ 2). I therefore **FIND** that the plaintiffs satisfy the redressability prong for standing.

Finally, the plaintiffs must show that they have associational standing, which requires a showing that their members (1) "would otherwise have standing to sue in their own right," (2) "the

interests [they] seek[] to protect are germane to the organization[s'] purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). As I have explained above, the plaintiffs have pleaded sufficient facts to establish that at least one of their members would have standing to sue in her own right. The plaintiffs easily satisfy the second element because each has an organizational interest in preserving the environment and preventing pollution. (*See* Proposed Am. Compl. [Docket 19-1], ¶¶ 10-12). As for the third prong, the plaintiffs are capable of proceeding without the participation of their individual members because they seek "a purely legal ruling without requesting that the federal court award individualized relief to its members," such as money damages. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004). Accordingly, I **FIND** that the plaintiffs satisfy the requirements to maintain organizational standing on behalf of their members.

Because the facts as alleged in the plaintiffs' proposed amended complaint are sufficient to confer organizational standing under Article III, I **FIND** that the plaintiffs' proposed amended complaint would survive a Rule 12(b)(1) motion to dismiss and is therefore not futile.

### B.       The amendment is not futile for failure to state a claim

The defendant also argues that the proposed amended complaint is futile because it fails to state a claim. To determine whether the proposed amended complaint is futile, I will determine whether it would survive a motion to dismiss under Rule 12(b)(6). A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court stated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed

factual    allegations,'    but    it    demands    more    than    an    unadorned,

the-defendant-unlawfully-harmed-me accusation." 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds'

of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not

bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept

as true legal conclusions in a complaint that merely recite the elements of a cause of action

supported by conclusory statements. *Iqbal*, 556 U.S. at 677-78. "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial

plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that

the defendant is liable, and those facts must be more than merely consistent with the defendant's

liability to raise the claim from merely possible to probable. *Id.*

In determining whether a plausible claim exists, the court must undertake a

context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). A

complaint must contain enough facts to "nudge[] [a] claim[] across the line from conceivable to

plausible[.]" *Twombly*, 550 U.S. at 570.

To state a claim under Section 301 of the Clean Water Act, a plaintiff must show that the

defendant "(1) discharged (2) a pollutant (3) into navigable waters (4) from a point

source (5) without a permit." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1142 (10th

Cir. 2005). Additionally, in order to bring a citizen suit under Section 505 of the Clean Water Act, as the plaintiffs have done, violations of the Act must be ongoing, not "wholly past." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 60-61 (1987); *see* 33 U.S.C. § 1365(a)(1) (citizens may file suit "against any person . . . *who is alleged to be in violation of* . . . an effluent standard or limitation under this chapter . . .") (emphasis added). In the Fourth Circuit, a citizen plaintiff establishes an ongoing violation of the Clean Water Act "(1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 693 (4th Cir. 1989).

The defendant does not dispute that selenium is a pollutant or that it does not have a permit. Therefore, I will determine whether the complaint contains sufficient facts to establish the remaining elements: (1) discharge, (3) into navigable waters, and (4) from a point source.

To show that the defendant is discharging selenium, the plaintiffs state that on March 25, 1976, the West Virginia Department of Environmental Protection issued a permit to Chafin Branch Coal Company to operate a surface mine on lands that are now owned by the defendant. (Proposed Am. Compl. [Docket 19-1], ¶ 26). During operation of the mine, a valley fill was constructed that remains on the defendant's property. (*Id.* ¶ 27). On March 6, 2006, the defendant took ownership of the property and the valley fill, which is no longer covered by a permit. (*Id.* ¶ 25, 29). "On February 26, 2013, a water sampler hired by Sierra Club took a water sample less than one mile downstream of the Valley Fill . . . . That sample demonstrated an elevated selenium concentration in Laurel Fork of 2.51 µg/l. No other valley fills drain into Laurel Fork and upon information and belief there are no other sources of selenium in Laurel Fork." (*Id.* ¶¶ 31-32).

The defendant argues that the plaintiffs have not established that selenium discharges are *ongoing*. According to the defendant, "[i]f selenium discharges are now occurring, said discharges could only occur though migration of residual contaminants within the fill, because the ongoing discharge activity of placing overburden for valley fill construction has terminated at least fourteen plus years ago." (Mem. of Law in Supp. of Rule 12(b)(6) Mot. to Dismiss [Docket 14], at 9). Because the activities that caused the alleged discharges ceased long ago, the defendant contends that they cannot be said to be ongoing. For support, the defendant cites *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 60-61 (1987), which held that citizen suits under the Clean Water Act must be based on conduct that is ongoing or intermittent, not "wholly past." However, *Gwaltney* left unresolved whether discharges are considered "ongoing" where, as here, the conduct that caused the violation has ceased, but the effects of the violation remain. The lower courts have split on this issue:

> Some courts, interpreting the [Clean Water Act] and *Gwaltney* expansively, have held that the continuing migration of pollutants from past discharges is sufficient to establish jurisdiction under Section 505(a)(1). *See Umatilla Waterquality Protective Ass'n v. Smith Frozen Foods, Inc.,* 962 F. Supp. 1312, 1322 (D. Or. 1997) (holding "a discharge of pollutants is ongoing if the pollutants continue to reach navigable waters, even if the discharger is no longer adding pollutants to the point source itself"); *Werlein v. United States,* 746 F. Supp. 887, 897 (D. Minn. 1990) (holding pollutants from past discharges that are released over time by infiltration of contaminated soil is "ongoing pollution"), *class. cert. vacated by* 793 F. Supp. 898 (D. Minn. 1992).
>
> Other courts, before and after *Gwaltney,* have reached the opposite conclusion, holding that the migration of residual contamination from prior discharges is not an ongoing violation. *See Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.,* 989 F.2d 1305, 1312–13 (2d Cir. 1993) ("The present violation requirement of the Act would be completely undermined if a violation included the mere decomposition of pollutants."); *Pawtuxet Cove Marina v. Ciba–Geigy Corp.,* 807 F.2d 1089, 1094 (1st Cir. 1986) (dismissing citizen suit because the alleged polluter had ceased operations by the time of the suit); *Hamker v. Diamond Shamrock Chem. Co.,* 756 F.2d 392, 397 (5th Cir. 1985) (dismissing complaint because it "alleges only a single past discharge with continuing effects, not a continuing

discharge"); *Aiello v. Town of Brookhaven,* 136 F.Supp.2d 81, 120 (E.D.N.Y. 2001) (holding CWA does not allow citizen suit against a past polluter "for the ongoing migrating leachate plume"); *Wilson v. Amoco Corp.,* 33 F. Supp. 2d 969, 975–76 (D. Wyo. 1998) (concluding "that migration of residual contamination from previous releases does not constitute an ongoing discharge"), *factual background stated in* 989 F. Supp. 1159 (D. Wyo. 1998); *Friends of Santa Fe County v. LAC Minerals, Inc.,* 892 F. Supp. 1333, 1354 (D.N.M. 1995) (finding no ongoing discharge from pile of waste rock on surface); *Brewer v. Ravan,* 680 F. Supp. 1176, 1183 (M.D. Tenn. 1988) (dismissing citizen suit based on allegations made against a permanently closed manufacturing plant).

*Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1139-40 (10th Cir. 2005).

None of the cases cited in *Sierra Club* are binding on this court, and there is no Fourth Circuit precedent directly addressing whether past discharges with lingering effects give rise to a citizen suit. Nonetheless, the Fourth Circuit has stated, albeit not in the context of a citizen suit, that "[e]ach day the pollutant remains in the wetlands without a permit constitutes an additional day of violation" of Section 301 of the Clean Water Act. *Sasser v. Adm'r, U.S. E.P.A.*, 990 F.2d 127, 129 (4th Cir. 1993). Further, I am persuaded by the reasoning set out in *North Carolina Wildlife Fed'n v. Woodbury*, No. 87-584-CIV-5, 1989 WL 106517, at *1-2 (E.D.N.C. Apr. 25, 1989). In that case, the defendants submitted affidavits establishing that their discharges of fill materials and dredging activities had ceased six years before the filing of the lawsuit. *See id.* at *2. The defendants therefore argued that any Clean Water Act violations were "wholly past" under *Gwaltney*. *See id.* The district court rejected the defendants' argument. *See id*. The court cited Justice Scalia's concurrence in *Gwaltney*, joined by Justice Stevens and Justice O'Connor, which reads:

> The phrase in § 505(a), "to be in violation," unlike the phrase "to be violating" or "to have committed a violation," suggests a state rather than an act—the opposite of a state of compliance. A good or lucky day is not a state of compliance. Nor is the dubious state in which a past effluent problem is not recurring at the moment but the cause of that problem has not been completely and clearly eradicated. When a company has violated an effluent standard or limitation, it remains, for purposes of

§ 505(a), "in violation" of that standard or limitation so long as it has not put in place remedial measures that clearly eliminate the cause of the violation.

*Gwaltney*, 484 U.S. at 69 (1987) (Scalia, J., concurring). The district court in *Woodbury* also explained why public policy supported its position:

If citizen-suits were barred merely because any illegal ditching and drainage of a wetland tract was completed before it might reasonably be discovered, violators would have a powerful incentive to conceal their activities from public and private scrutiny—which would lead to serious problems in public and private enforcement of the Clean Water Act.

*Woodbury*, 1989 WL 106517, at *3.

I agree with the reasoning set out in *Woodbury* and **FIND** that one may continue to be in violation of the Clean Water Act even if the activities that caused the violations have ceased. Other courts are in accord with this position. *See, e.g.*, *City of Mountain Park, Ga. v. Lakeside at Ansley, LLC*, 560 F. Supp. 2d 1288, 1293-97 (N.D. Ga. 2008); *Greenfield Mills, Inc. v. Goss*, 1:00 CV 0219, 2005 WL 1563433, at *5 (N.D. Ind. June 28, 2005); *Informed Citizens United, Inc. v. USX Corp.*, 36 F. Supp. 2d 375, 377-78 (S.D. Tex. 1999); *United States v. Reaves*, 923 F. Supp. 1530, 1534 (M.D. Fla. 1996).

In the instant case, the plaintiffs allege a water sampler detected elevated levels of selenium less than one mile downstream from the defendant's valley fill and that there are no other sources of selenium in Laurel Fork. (*See* Proposed Am. Compl. [Docket 19-1], ¶ 31-32). I **FIND** that these facts are sufficient to state a claim for an ongoing violation of the Clean Water Act under the Fourth Circuit's test because "a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations [of the Act]." *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 693 (4th Cir. 1989).

The second requirement the plaintiffs must establish to state a claim under the Clean Water Act is that the defendant's valley fill is a "point source" under the Act. *Sierra Club v. El Paso Gold*

11

*Mines, Inc.*, 421 F.3d 1133, 1142 (10th Cir. 2005). The Act defines a point source as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). The plaintiffs' proposed amended complaint alleges that the valley fill is a point source because it "collects, channels, and conveys surface runoff and groundwater and discharges collected pollutants." (Proposed Am. Compl. [Docket 19-1], ¶ 34). The defendant argues that the plaintiffs merely allege nonpoint source discharges from runoff and groundwater: "If there is any flow emanating from the [valley fill], it is sourced from the soil and groundwater within the fill itself." (Mem. of Law in Supp. of Rule 12(b)(6) Mot. to Dismiss [Docket 14], at 13).

There are no cases explicitly determining whether a valley fill itself is a point source. However, the definition of a "point source" is intended to be interpreted broadly, as indicated by the statute's "including but not limited to" language. *See United States v. Earth Sciences, Inc.*, 599 F.2d 368, 373 (10th Cir. 1979) ("The concept of a point source was designed to further this scheme by embracing the broadest possible definition of any identifiable conveyance from which pollutants might enter the waters of the United States."). Point sources can take a variety of forms. *See, e.g.*, *United States v. Lucas*, 516 F.3d 316, 333 (5th Cir. 2008) (septic systems); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1009 (11th Cir. 2004) (piles of waste debris at scrap metal yard); *Center for Biological Diversity v. Marina Point Dev. Assocs.*, 434 F. Supp. 2d 789, 797 (C.D. Cal. 2006) (erosion-generated gullies carrying dredged sand and gravel into protected waters). The Fifth Circuit has held that spoil piles created as a result of removing rock above coal seams in a strip mining operation constituted a point source:

12

> A point source . . . may . . . be present where miners design spoil piles from discarded overburden such that, during periods of precipitation, erosion of spoil pile walls results in discharges into a navigable body of water by means of ditches, gullies and similar conveyances, even if the miners have done nothing beyond the mere collection of rock and other materials. The ultimate question is whether pollutants were discharged from "discernible, confined, and discrete conveyance(s)" either by gravitational or nongravitational means.

*See Sierra Club v. Abston Const. Co., Inc.*, 620 F.2d 41, 45 (5th Cir. 1980). Further, "[t]he non-point source designation is limited to uncollected runoff water which is difficult to ascribe to a single polluter." *Beartooth Alliance v. Crown Butte Mines*, 904 F. Supp. 1168, 1173 (D. Mont. 1995) (citing *Trustees for Alaska v. EPA*, 749 F.2d 549, 558 (9th Cir. 1984)).

Given the broad definition of a point source under 33 U.S.C. § 1362(14) and as interpreted by courts, I **FIND** that the plaintiffs have adequately alleged that the valley fill is a point source. The valley fill toe is a "discernible, confined and discrete conveyance," 33 U.S.C.A. § 1362(14), whereby water percolates and is discharged into the unnamed tributary of Laurel Fork. (*See* Proposed Am. Compl. [Docket 19-1], ¶ 34). Unlike uncollected rainfall runoff, water discharged from the toe of the valley fill is easily ascribed to a single source: the valley fill.

The third requirement that the plaintiffs must establish to state a claim under the Clean Water Act is that the defendant discharges into a "navigable water." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1142 (10th Cir. 2005). The Act defines navigable waters as "waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). Congress intended to define broadly the waters that fall within the Act's protection. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 133 (1985) ("[T]he term 'navigable' as used in the Act is of limited import."). The United States Supreme Court has held that "waters of the United States" under the Clean Water Act include "relatively permanent, standing or flowing bodies of water." *Rapanos v. United States*, 547 U.S. 715, 732 (2006). The EPA defines "waters of the United States" as "intrastate

lakes, rivers, streams (including intermittent streams) . . . " and their "tributaries." 40 C.F.R. § 122.2(c) and (e).

The plaintiffs allege that the defendant discharges selenium into an "unnamed tributary of Laurel Fork of Ben Creek of Tug Fork. That stream is a water of the United States." (Proposed Am. Compl. [Docket 19-1], ¶ 1). Bodies of water that flow into streams of the United States are themselves waters of the United States. *See, e.g.*, *Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526, 533-34 (9th Cir. 2001) (irrigation canals that exchange water with natural streams and one lake); *United States v. Tex. Pipe Line Co.*, 611 F.2d 345, 347 (10th Cir. 1979) (unnamed tributary which flowed, at least intermittently, into major river considered "navigable water" under Clean Water Act); *Georgia v. City of East Ridge, Tenn.*, 949 F. Supp. 1571, 1578 (N.D. Ga. 1996) (unnamed tributary that flowed into an interstate stream). I therefore **FIND** that the plaintiffs have adequately alleged discharge into a navigable water under the Clean Water Act.

Finally, the defendant argues that it cannot be liable for the alleged discharges because it was not responsible for and received no benefits from the construction of the valley fill; the defendant is merely a passive landowner on which the valley fill sits. This argument is without merit. The Fourth Circuit Court of Appeals recently addressed this question. In *West Virginia Highlands Conservancy, Inc. v. Huffman*, the court held that the West Virginia Department of Environmental Protection ("WVDEP") was required to obtain permits under the Clean Water Act for discharges that the WVDEP did not cause. *See* 625 F.3d 159, 167-68 (4th Cir. 2010). The WVDEP had simply reclaimed land formerly used for mining and had not caused the activities that resulted in discharges. *Id.* at 165, 167. But the Fourth Circuit rejected the WVDEP's arguments:

> [T]here is simply no causation requirement in the statute. On its face, 33 U.S.C. § 1311(a) bans "the discharge of any pollutant by any person" regardless of whether that "person" was the root cause or merely the current superintendent of the

14

discharge. In other words, the statute takes the water's point of view: water is indifferent about who initially polluted it so long as pollution continues to occur.

*Id.* at 167. Therefore, the defendant's arguments that it did not construct the valley fill or receive any benefits from its construction are irrelevant.

Accordingly, I **FIND** that the plaintiffs' proposed amended complaint would survive a motion to dismiss for failure to state a claim.

## IV. Conclusion

Because it would survive a motion to dismiss, I **FIND** that the proposed amended complaint is not futile. Therefore, the plaintiffs' Motion for Leave to File Amended Complaint for Declaratory and Injunctive Relief and for Civil Penalties [Docket 19] is **GRANTED**. The plaintiffs are **DIRECTED** to file their proposed amended complaint within ten days of this Order. Additionally, the defendant's Rule 12(b)(1) Motion to Dismiss [Docket 11] and Rule 12(b)(6) Motion to Dismiss [Docket 13] are **DENIED** for the reasons stated above.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:          December 2, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE